**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN BERNARD STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00178-ACL |
| | ) | |
| UNKNOWN MAZE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Jonathan Bernard Stewart for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $27.83. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement, showing the deposits that have been made on his account. (Docket No. 5). The statement shows an average monthly deposit of $139.17. The Court will therefore assess an initial partial filing fee of $27.83, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal

construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Pemiscot County Jail in Caruthersville, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming Officer Maze and K-9 Officer Rockey as defendants. (Docket No. 1 at 2-3). They are sued in both their official and individual capacities. Plaintiff's complaint concerns two alleged incidents of excessive force during two separate arrests, both resulting in him being bitten by a law enforcement canine.

In his "Statement of Claim," plaintiff asserts that the first incident took place on June 22, 2021, when he was bitten by a canine of the Kennett Police Department. (Docket No. 1 at 3). He alleges that he received no medical attention and no tetanus shot for his injuries. Following this, plaintiff states that he "was placed in the Dunklin County Jail with 3 blankets and had to sleep on the floor." His phone and wallet were taken, and he has still not had them returned.

According to plaintiff, the second incident occurred on September 29, 2021, and "was different from the first time." He states that he was at the home of "the mother of [his] children," and that he "was on the run at the time." Plaintiff asserts that "the attack happened" when he "was arrested," and that the "Kennett Police should have video evidence showing that [he] was in fact handcuffed then attack[ed]." He also notes that he has an officer that witnessed the attack, and that he can prove that he "was handcuffed already when the dog attacked me." After the purported "attack," plaintiff was taken to the Pemiscot County emergency room.

With regard to injuries, plaintiff states that the first time he was bitten, he received no medical attention at all, and "had bite marks on [his] right forearm." (Docket No. 1 at 4). The second time, plaintiff received "eight stitches on [his] right leg just under [his] right knee." The bites were also cleaned, and he was given a tetanus shot. As a result of these incidents, plaintiff seeks $1 million in damages. (Docket No. 1 at 5).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, accusing Officer Maze and K-9 Officer Rockey of excessive force. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court must dismiss this action without prejudice for failure to state a claim.

### A. Official Capacity Claims

Plaintiff has sued Officer Maze and K-9 Officer Rockey in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v.*

4

*Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, Officer Maze and K-9 Officer Rockey are alleged to be members of the Kennett Police Department. As such, the official capacity claims against them are actually claims against the City of Kennett itself, their employer.

A local governing body such as the City of Kennett can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the City of Kennett.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

6

(1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not alleged sufficient facts to support the proposition that the City of Kennett is liable for harming him due to an unconstitutional policy, custom, or failure to train.

First, as to policy, plaintiff's facts do not point to the existence of any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City of Kennett's] governing body" as being at issue in this case. Certainly, he does not claim that he was bitten by canines due to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Beyond a failure to specifically plead the existence of an unconstitutional policy, plaintiff has also not provided any facts supporting the proposition that such a policy exists.

Second, with regard to custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" the City of Kennett's employees,

7

much less that Kennett policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of a "persistent pattern," plaintiff vaguely asserts two separate canine-involved incidents that occurred to him. Neither of these incidents adequately state a constitutional violation, let alone show a "pattern of unconstitutional misconduct" by Kennett police officers sufficient to put the city on notice.

Third, and similarly, plaintiff has not demonstrated that the City of Kennett was deliberately indifferent in failing to train or supervise its employees. That is, he has not shown that the city "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Plaintiff can assert that the City of Kennett had notice by alleging a "pattern of similar constitutional violations by untrained employees." As noted above, however, his factual allegations – such as they are – do not establish any constitutional violations by City of Kennett employees, and certainly not a pattern of violations.

Finally, to the extent that plaintiff seeks to hold the City of Kennett responsible for the actions of Officer Maze and K-9 Officer Rockey, the Court notes that respondeat superior is not available in 42 U.S.C. § 1983 municipal liability actions. *See A.H.*, 891 F.3d at 728 ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to state a claim against the City of Kennett. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, the official capacity claims against Officer Maze and K-9 Officer Rockey must be dismissed.

8

### B. Individual Capacity Claims

Plaintiff has also sued Officer Maze and K-9 Officer Rockey in their individual capacities. However, he has failed to state a claim for three reasons.

First, while plaintiff has identified Officer Maze and K-9 Officer Rockey as defendants in this action, both in the caption and in the section of the form complaint for naming the parties, he has not placed them in the "Statement of Claim." That is, there are no allegations directed against them. Simply naming a person as a defendant is not enough to assert their responsibility. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); and *Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003) (agreeing with district court dismissal of defendants who were merely listed in the complaint, and who were not alleged to have been personally involved in the constitutional violations).

Second, and relatedly, plaintiff has not connected Officer Maze and K-9 Officer Rockey to the violation of his constitutional rights. Individual liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff

9

must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

As noted above, neither Officer Maze nor K-9 Officer Rockey appear in the "Statement of Claim." It thus follows that plaintiff has not established the required causal link between the actions of either officer, and the deprivation of his constitutional rights. Based on K-9 Officer Rockey's title, the Court can assume that he was present at the incidents of which plaintiff complains. Nevertheless, plaintiff presents no facts alleging that K-9 Officer Rockey did or failed to do something that amounted to a constitutional violation. For example, he has not asserted that K-9 Officer Rockey ordered his canine to "attack" plaintiff. As to Officer Maze, there is no indication whatsoever as to his role. Because plaintiff has failed to allege the personal responsibility of Officer Maze and K-9 Officer Rockey, he has failed to state a claim against them in their individual capacities.

Finally, plaintiff has not presented sufficient facts to demonstrate excessive force under the Fourth Amendment. "The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under 42 U.S.C. § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

The use of a canine to effect an arrest is reviewed under the general Fourth Amendment excessive force standard established in *Graham v. Connor*, 490 U.S. 386, 397 (1989). *See Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007). To that end, "[a] constitutional problem may arise based on *the manner* in which canines are used." *Szabla*, 486 F.3d at 391 (emphasis in original). By way of example, "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender." *Id*.

Here, plaintiff complains of two separate incidents in which he was bitten by a law enforcement canine. In the first incident, plaintiff provides no contextual facts at all, stating only that he was bitten on "Father's Day night," on June 22, 2021. Regarding the second incident, plaintiff states that he "was on the run" and "attacked" when he "was arrested." He further states that he can "prove that [he] was handcuffed already when the dog attacked [him]."

These ambiguously-worded and conclusory allegations are not sufficient to show that the force used against plaintiff was unreasonable. There are no facts, for example, alleging that officers did not give him a warning that a dog was going to be used to apprehend him, thus denying him

11

an opportunity to surrender peacefully. There are also no facts showing that plaintiff was compliant and not resisting arrest. To the extent that plaintiff's compliance is mentioned at all, he acknowledges that he "was on the run."

Several times, plaintiff states that he suffered an "attack," or that "the dog attacked" him after he was handcuffed. However, he makes no effort to describe what he means by "attack." That is, it is unclear whether he is alleging that when he was already handcuffed, a police officer ordered the canine to bite him for the purpose of hurting him, or whether the canine bit-and-held him while officers were in the process of placing him in handcuffs. Without any supporting facts to support the proposition that he was unconstitutionally "attacked," plaintiff's allegation amounts to a conclusion, which is not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

For all these reasons, plaintiff's complaint fails to adequately state a claim against Officer Maze and K-9 Officer Rockey in their individual capacities. Therefore, these claims must be dismissed.

C.   **Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $27.83 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 24th day of February, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

13